**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Laura Noemi Pineda, | ) | No. CIV 12-522-TUC-LAB |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g).

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties.  *See* FED.R.CIV.P. 73; (Doc. 15).

The final decision of the Commissioner is not "supported by substantial evidence and free from legal error." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  Specifically, the ALJ improperly discounted the treating physician's opinion of disability. The case will be remanded for payment of benefits.


PROCEDURAL HISTORY

On February 24, 2009, Pineda constructively filed an application for disability insurance benefits and supplemental security income.  (Tr. 134)   She alleged disability beginning on

October 23, 2008, due to fibromyalgia, depression, and anxiety.  (Tr. 134, 138)  Her claim was denied initially and upon reconsideration. (Tr. 65-72, 73-79)

Pineda requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Larry E. Johnson on January 13, 2011.  (Tr. 42)  In his decision, dated March 4, 2011, the ALJ found Pineda was not disabled. (Tr. 24-34) Pineda appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-4);  *See Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989).

Pineda subsequently filed this action appealing the Commissioner's final decision. (Doc. 1).  She argues the ALJ improperly discounted her diagnoses of post-traumatic stress disorder, fibromyalgia, and endolymphatic hydrops (an inner ear disorder); improperly discounted the opinion of her treating physician; and improperly discounted her subjective testimony of disability.  (Doc. 26, p. 2)

Claimant's Work History and Medical History

From 1995 to 2003, Pineda worked as a surveillance training coordinator at the Desert Diamond Casino.  (Tr. 54, 139)  Pineda was essentially healthy until she suffered a motor vehicle accident in 1999.  (Tr. 388, 610)  Subsequently, she developed chronic pain especially in the neck and shoulders, which has worsened over time.  (Tr. 388, 610) She also began experiencing anxiety attacks and flashbacks linked to sexual abuse she suffered as a child. (Tr. 54)  In 2003, she went on short-term disability and subsequently was laid off.  (Tr. 50) She found another position at the casino, but she resigned because the work was too stressful.  (Tr. 50-51)

Pineda worked for a time in customer service at the department of motor vehicles, but she eventually quit because she found the work increasingly difficult due to pain and dizziness. (Tr. 52)  In her application for benefits, she alleged disability beginning on October 23, 2008, due to fibromyalgia, depression, and anxiety.  (Tr. 134, 138)

Physical Impairments

In January of 2009, Pineda was treated in the emergency room for (1) nausea and vomiting, (2) muscle spasm, and (3) paresthesia (tingling or burning sensation). (Tr. 199-200) The emergency room physician was unable to reach a definite diagnosis but opined she could be suffering from muscle spasms and Cymbalta medication withdrawal. *Id.*

The record contains treatment notes from Pineda's treating physician, Marnie Lamm, from May of 2009 to October of 2010. (Tr. 289-300, 388-397, 418-431) In January of 2010, Lamm offered the following assessment: Dizziness, chronic; Myalgia and myositis (muscle pain and inflammation); Fibromyalgia; Chronic pain syndrome, esp. shoulders. (Tr. 389)

In August of 2009, Pineda was treated in the emergency room for dizziness, headache, neck pain, neck burning, and neck stiffness. (Tr. 278)  The emergency room physician was unable to reach a definite diagnosis. *Id.*

In June of 2009, John Fahlberg, M.D., reviewed the medical record for the state disability determination service. (Tr. 246) He concluded Pineda's physical impairments were nonsevere. *Id.* He did not complete a Physical Residual Functional Capacity Assessment. *Id.* Fahlberg apparently believed Pineda had no medically determinable impairment at all. (Tr. 273)

In March of 2010, Stephen S. Dickstein, reviewed the medical record for the state disability determination service and affirmed Fahlberg's report  (Tr. 401)

In January of 2011, Lamm completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 609-11). Lamm explained Pineda suffers from regional pain syndrome and fibromyalgia triggered by a motor vehicle accident in 1999. *Id.* Her medication affects her balance, mental alertness, and fine motor skills. *Id.* He opined that Pineda could lift or carry less than 10 pounds occasionally and frequently. *Id.* She could stand and/or walk for at least 2 hours in an 8-hour day, but she "needs to change positions often due to pain, paresthesias, and neuropathy." *Id.* She could sit for less than 6 hours in an 8-hour day. *Id.* She should never crouch; balance; or climb ramps, stairs, ladders, rope, or scaffolds due to her chronic dizziness and unsteady gait. *Id.*

The record contains treatment notes from pain specialist Cela M. Archambault, Ph.D., from March of 2010 to December of 2010. (Tr. 532-607). Her diagnostic impression reads as

- 3 -

follows: Post Traumatic Stress Disorder (PTSD) – chronic; Pain Disorder with both psychological and physical components; and Insomnia related to her PTSD.  (Tr. 579)

The medical record contains treatment notes from March of 2010 to October of 2010 from ear, nose, and throat specialist James D. Gordon, M.D. (Tr. 410-416) Gordon evaluated Pineda for dizziness.  (Tr. 416) He could not find a definite diagnosis but assessed "questionable endolymphatic hydrops with recurrent symptoms."  (Tr. 414)

Mental Impairments

The record contains treatment notes from COPE Behavioral Services from December of 2008 to December of 2010.  (Tr. 207-235; 311-385; 433-530)  In December of 2008, her medications are listed as Celebrex, swelling;  tramadol, pain; alprazolam, anxiety; baclofen, muscle relaxer; amitriptyline, sleep; Cymbalta, depression. (Tr. 219)  In March of 2009, Robert McCabe, M.D., assessed (1) depressive disorder nos and (2) opiod dependence. (Tr. 215)  In January of 2010, nurse practitioner Patricia Joyce completed a Mental Residual Functional Capacity Assessment.  (Tr. 613-15)  She diagnosed PTSD and Major Depression, moderate, recurrent.  (Tr. 615).  She opined that Pineda was markedly limited in her ability to maintain concentration and pace, in her ability to conduct social interaction, and in her adaptation skills.  *Id*.  She opined "her current symptoms would significantly interfere with her ability to work at this time."  *Id*.

In July of 2009, Pineda was examined by Hunter Yost, M.D., for the state disability determination service.  (Tr. 241) Yost offered the following diagnosis: "I: Mood disorder with moderate depressive features due to chronic physical pain;  II: No diagnosis;  III: Fibromyalgia and chronic widespread pain; IV: Primary social support with son; V: Current GAF of 61 to 70." (Tr. 248)  He opined her condition would not impose any limitations lasting 12 months.  (Tr. 249)

In July of 2009, Alan Goldberg, Psy.D., reviewed the medical record for the state disability determination service and completed a Psychiatric Review Technique form. (Tr. 257) He documented affective disorder (depression NOS secondary to pain syndrome) and substance

1   addiction disorder (from pain medication), but he found her impairments not severe.  (Tr. 257-
2   69)  He noted Pineda was taking Ambien, amitriptylene, diazepam and Effexor.  (Tr. 269)  Upon
3   analyzing the "B" criteria of mental limitations, he found no episodes of decompensation and no
4   functional  limitation.    (Tr. 267);  *see*  20  C.F.R.  Pt.  404,  Subpt.  P.,  App.  1,  §  12.00.

5        In March of 2010, Jack A. Marks, M.D., reviewed the medical record for the state
6   disability determination service and affirmed Goldberg's report.  (Tr. 402)

7

8        Hearing Testimony
9        On January 13, 2011, Pineda appeared with counsel at a hearing before ALJ Larry E.
10  Johnson.  (Tr. 40)    She was 37 years old at the time of the hearing.  (Tr. 42, 61) In her
11  application  for  benefits,  she  alleged  disability  beginning  on  October  23,  2008,  due  to
12  fibromyalgia, depression, and anxiety.  (Tr. 134, 138)

13       From 1995 to 2003, Pineda worked as a surveillance training coordinator at the Desert
14  Diamond Casino.  (Tr. 45, 54, 139)  In December of 1999, she was injured in a car accident.  (Tr.
15  49)  She took leave under the Family and Medical Leave Act and then short-term disability
16  leave. (Tr. 49-50)  She was then laid off, but she took a position with another manager at a
17  reduced salary.  (Tr. 50)  She eventually quit in December of 2003 due to anxiety attacks and
18  poor sleep.  (Tr. 50-51)

19       Pineda worked briefly at an apartment complex and doing data entry.  (Tr. 51)  She then
20  took a position at the department of motor vehicles (DMV).  (Tr. 51)  Unfortunately, she had
21  trouble remembering details and difficulty staying in one position due to pain.  (Tr. 52)  She
22  resigned because she could not stay focused and people were complaining that she slurred her
23  words.  (Tr. 55-56)

24       Pineda has pain on the right side of her body, her legs, and right arm.  (Tr. 52-53)  She
25  has headaches and suffers from dizziness. (Tr. 52-53)  She testified that she suffered sexual
26  abuse as a child and attempted suicide in 1987.  (Tr. 54) While she was working at the casino,
27  she started having flashbacks of the abuse due to the medication she was taking.  (Tr. 54) This
28  resulted in anxiety attacks and insomnia.  (Tr. 54)

1

2    <u>CLAIM EVALUATION</u>

3        Social Security Administration (SSA) regulations require that disability claims be

4    evaluated pursuant to a five-step sequential process.  20 C.F.R. §§ 404.1520, 416.920; *Baxter*

5    *v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991).  The first step requires a determination of

6    whether the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4),

7    416.920(a)(4).  If so, then the claimant is not disabled, and benefits are denied.  *Id.*

8        If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two,

9    which requires a determination of whether the claimant has a "medically severe impairment or

10   combination of impairments."  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  In making a

11   determination at step two, the ALJ uses medical evidence to consider whether the claimant's

12   impairment more than minimally limits or restricts his or her "physical or mental ability to do

13   basic work activities."  *Id.*  If the ALJ concludes the impairment is not severe, the claim is

14   denied.  *Id.*

15       Upon a finding of severity, the ALJ proceeds to step three, which requires a determination

16   of whether the impairment meets or equals one of several listed impairments that the

17   Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.

18   §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1.  If the claimant's

19   impairment meets or equals one of the listed impairments, then the claimant is presumed to be

20   disabled, and no further inquiry is necessary.  *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir.

21   1993).  If the claimant's impairment does not meet or equal a listed impairment, evaluation

22   proceeds to the next step.

23       The fourth step requires the ALJ to consider whether the claimant has sufficient residual

24   functional capacity (RFC)[1] to perform past work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

25   If yes, then the claim is denied.  *Id.*  If the claimant cannot perform any past work, then the ALJ

26

27   ────────────────────

28       [1] Residual functional capacity is defined as that which an individual can still do despite
his or her limitations.  20 C.F.R. §§ 404.1545, 416.945.

1  must move to the fifth step, which requires consideration of the claimant's RFC to perform other

2  substantial gainful work in the national economy in view of claimant's age, education, and work

3  experience.  20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

4        In determining whether the claimant retains the ability to perform other work, the ALJ

5  may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA.  *See* 20

6  C.F.R. Pt. 404, Subpt. P, App.2;  *Desrosiers v. Secretary of Health and Human Services,* 846

7  F.2d 573, 576-577 (9th Cir. 1988).  The grids categorize jobs according to their exertional

8  requirements such as sedentary work, light work, or medium work.  *Tackett v. Apfel*, 180 F.3d

9  1094, 1101 (9th Cir. 1999).  The grids calculate whether or not the claimant is disabled based on

10  the claimant's exertional ability, age, education, and work experience.  *Id.*  The grids are a valid

11  basis for denying claims where they completely and accurately describe the claimant's abilities

12  and limitations.  *Id.* at 1101-02.  If the claimant has only exertional limitations, the claim may

13  be resolved based only on the grids.  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir.

14  2006).

15        If the claimant has significant non-exertional limitations, the grids do not apply.  *Penny*

16  *v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993).  "Non-exertional limitations are limitations that

17  do not directly affect a claimant's strength."  *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.

18  1988).  Mental limitations, for example, are non-exertional.  *Id.*  at 1340-41.  If significant non-

19  exertional limitations prevent the claimant from performing the full range of work in any

20  exertional category, the ALJ must take the testimony of a vocational expert to deny the claim.

21  *Id.* at 1341.

22

23      The ALJ's Findings

24        At step one of the disability analysis, the ALJ found Pineda "has not engaged in

25  substantial gainful activity since October 23, 2008, the  alleged onset date . . . ."  (Tr. 26).  At

26  step two, he found Pineda "has the following severe impairments: affective disorder; chronic

27  pain syndrome . . ."  (Tr. 26)  At step three, the ALJ found Pineda's impairments did not meet

28

1  or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1,
2  Subpart P, of 20 C.F.R., Part 404.  (Tr. 29)

3          The ALJ then analyzed Pineda's residual functional capacity (RFC).  He found she "has
4  the residual functional capacity to perform the full range of sedentary work. . . ."  (Tr. 30)

5          At step four, the ALJ found Pineda "is unable to perform any past relevant work. . . . (Tr.
6  33) At step five, the ALJ found that Pineda was not disabled using the grids.  (Tr. 33-34)

7

8          STANDARD OF REVIEW

9          An individual is entitled to disability benefits if he or she demonstrates, through medically
10 acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity
11 due to a physical or mental impairment that can be expected to last for a continuous period of
12 at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  "[A] claimant will be found
13 disabled only if the impairment is so severe that, considering age, education, and work
14 experience, that person cannot engage in any other kind of substantial gainful work which exists
15 in the national economy."  *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

16         The findings of the ALJ are meant to be conclusive.  42 U.S.C. §§ 405(g), 1383(c)(3).
17 The decision to deny benefits "should be upheld unless it contains legal error or is not supported
18 by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence
19 is defined as "such relevant evidence as a reasonable mind might accept as adequate to support
20 a conclusion."  *Id.*  It is "more than a mere scintilla but less than a preponderance."  *Id.*

21         "Where evidence is susceptible to more than one rational interpretation, the ALJ's
22 decision should be upheld."  *Orn*, 495 F.3d at 630.  "However, a reviewing court must consider
23 the entire record as a whole and may not affirm simply by isolating a specific quantum of
24 supporting evidence."  *Id.*

25         In evaluating evidence to determine whether a claimant is disabled, the opinion of a
26 treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.
27 1993).  The ALJ may reject a treating physician's uncontradicted opinion only if she sets forth
28 clear and convincing reasons for doing so.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

1    If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that

2    opinion only if he provides specific and legitimate reasons supported by substantial evidence in

3    the record.  *Lester,* 81 F.3d at 830.  No distinction is drawn "between a medical opinion as to a

4    physical condition and a medical opinion on the ultimate issue of disability."  *Rodriguez v.*

5    *Bowen*, 876  F.2d 759, 761 n.7 (9th Cir. 1989).

6        "The opinion of an examining physician is, in turn, entitled to greater weight than the

7    opinion of a non[-]examining physician."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

8    "[T]he [ALJ] must provide 'clear and convincing' reasons for rejecting the uncontradicted

9    opinion of an examining physician."  *Id.*  "[T]he opinion of an examining doctor, even if

10    contradicted by another doctor, can only be rejected for specific and legitimate reasons that are

11    supported by substantial evidence in the record."  *Id*. at 830-31.

12        "Where medical reports are inconclusive, questions of credibility and resolution of

13    conflicts in the testimony are functions solely of the [ALJ]."  *Magallanes,* 881 F.2d  747, 751

14    (9th Cir. 1989) (punctuation omitted).  The ALJ's finding that a claimant is less than credible,

15    however, must have some support in the record.  *See Light v. Social Sec. Admin.,* 119 F.3d 789

16    (9th Cir. 1997).

17        The ALJ need not accept the claimant's subjective testimony of disability, but if he

18    decides to reject it, "[]he must provide specific, cogent reasons for the disbelief."  *Lester,*  81

19    F.3d at 834.  "Unless there is affirmative evidence showing that the claimant is malingering, the

20    [ALJ]'s reasons for rejecting the claimant's testimony must be clear and convincing."  *Id.*

21    "General findings are insufficient; rather, the ALJ must identify what testimony is not credible

22    and what evidence undermines the claimant's complaints."  *Id.*

23

24    <u>DISCUSSION</u>

25        The ALJ committed legal error when he improperly discounted the opinion of Pineda's

26    treating physician, Marnie Lamm.  *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  The

27    court does not reach Pineda's remaining claims of error.

28

1    "Because treating physicians are employed to cure and thus have a greater opportunity

2    to know and observe the patient as an individual, their opinions are given greater weight than the

3    opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  The ALJ

4    may reject the treating physician's contradicted opinion[2] only if he sets forth "specific and

5    legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d

6    821, 830 (9th Cir.1996) (punctuation modified);  *see also Widmark v. Barnhart*, 454 F.3d 1063,

7    1067 (9th Cir. 2006) (applying the "specific and legitimate" test).  "This can be done by setting

8    out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

9    interpretation thereof, and making findings." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

10    "The ALJ must do more than offer his conclusions."  *Id.*   "He must set forth his own

11    interpretations and explain why they, rather than the doctor['s], are correct."   *Id.*

12        If the treating source's opinion "is well-supported by medically and acceptable clinical

13    and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

14    in [the] case record," it must be given "controlling weight."  20 C.F.R. § 404.1527(c)(2); §

15    416.927(c)(2).  If the treating source's opinion is not given controlling weight, the ALJ must

16    nevertheless analyze other factors such as the length, nature, and extent of the treating

17    relationship; the supportability and consistency of the opinion; and the degree of medical

18    specialization possessed by the treating source.  20 C.F.R. § 1527(d)(2 - 6); § 416.927(d)(2- 6);

19    *see also Sameena, Inc. v. U. S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("[A] federal

20    agency is obliged to abide by the regulations it promulgates.").  "In many cases, a treating

21    source's medical opinion will be entitled to the greatest weight and should be adopted even if

22    it does not meet the test for controlling weight."  SSR 96-2p, 1996 WL 374188 at *4 (July 2,

23    1996)  In sum, the ALJ must "give good reasons" for the weight given to the treating source's

24    opinion.  20 C.F.R. § 404.1527(c)(2); § 416.927(c)(2).

25

26

27    ─────────────────

28        [2]  Lamm's opinion is contradicted by the opinion of the non-examining state agency
consultant, John Fahlberg, M.D.  (Tr. 246)

1      In this case, Pineda's treating physician, Lamm, explained that she suffers from chronic

2   neck, back, and shoulder pain as a result of her motor vehicle accident in 1999. (Tr. 610)  Her

3   pain is exacerbated by exertion, psychiatric stress, and extremes in temperature.  *Id*.  She also

4   has chronic dizziness and unsteady balance.  *Id*.  Her pain medication and muscle relaxants may

5   affect her balance, mental alertness, and fine motor skills.  *Id*.  Lamm opined Pineda can lift and

6   carry less than 10 pounds frequently and occasionally.  (Tr. 609)  She can stand or walk for at

7   least two hours in an 8-hour day, but she "needs to change positions often due to pain,

8   paresthesias, [and] neuropathy." (Tr. 609)  She can sit for less than 6 hours in an 8-hour work

9   day.  (Tr. 610)  She should never crouch; balance; or climb ramps, stairs, ladders, rope, or

10  scaffolds.  *Id*.    Lamm's functional limitations are so restrictive that even sedentary work is

11  precluded.[3]

12      The ALJ rejected Lamm's opinions and found Pineda has the physical ability to perform

13  the full range of sedentary work. The ALJ's stated reasons for doing so are not "specific and

14  legitimate."

15      The ALJ's decision reads in pertinent part as follows:

16      [Lamm's functional] limits are not consistent with the contemporaneous treatment
        notes and the overall record available at the hearing level.  The assessment is too
17      restrictive in light of the absence of diagnostic and clinical findings in the
        treatment notes.

18  (Tr. 33)  The ALJ's explanation is not legally sufficient.

19

20      The ALJ's stated rationale is simply a conclusory statement of his opinion.  The ALJ,

21  however, "must do more than offer his conclusions."  *Orn v. Astrue*,  495 F.3d 625, 632 (9th Cir.

22  2007).  He must cite to the record to explain what evidence contradicts the treating physician's

23  opinion and what evidence supports the contrary opinion of the state agency medical consultant.

24  *Id*.  The ALJ  "must set forth his own interpretations and explain why they, rather than the

25  doctor['s], are correct."  *Id*.  This, the ALJ failed to do.  *See also Orn v. Astrue*, 495 F.3d 625,

26

27      [3]  Sedentary work requires lifting up to 10 pounds and sitting for 6 hours in an 8-hour
        workday.  *See* 20 CFR §§ 404.1567; 416.967;  S.S.R. 96–9P, 1996 WL 374185; S.S.R. 83-10,
28  1983 WL 31251.

1   634 (9th Cir. 2007)  ("We . . . do not require that a medical condition be mentioned in every

2   report to conclude that a physician's opinion is supported by the record."); *Reddick v. Chater*,

3   157 F.3d 715, 725 n. 7 (9th Cir. 1998) ("In *Embrey* we rejected the ALJ's conclusory statements

4   rejecting the treating doctor's opinion on disability . . . ."). The ALJ's conclusory statements do

5   not support his decision to discount the opinion of the treating physician.

6          Elsewhere in his decision, the ALJ comments on the lack of objective evidence in support

7   of Pineda's subjective complaints of pain.  Because Lamm's opinion depends in large part on

8   Pineda's subjective complaints of pain, this may be considered an alternative reason for

9   discounting the opinion of the treating physician.

10          Specifically, the ALJ states "diagnostic and clinical examinations have generally been

11   unremarkable." (Tr. 31) He notes "[t]here is also no record in any of the clinic notes regarding

12   diffuse atrophy or muscle wasting," which he asserts are "[t]wo common side effects of

13   prolonged and or chronic pervasive pain." (Tr. 32)  In sum, he concludes "[h]er pain and

14   limitations are not fully corroborated by objective medical evidence." (Tr. 32) The ALJ's

15   objections however misconstrue the claimant's burden of production.

16          A claimant who alleges disability based on subjective symptoms such as pain or fatigue

17   must establish the existence of an underlying impairment that "could reasonably be expected to

18   (not that it did in fact) produce some degree of symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282

19   (9th Cir. 1996). "The claimant need not produce objective medical evidence of the pain or fatigue

20   itself or the severity thereof." *Id.* "Nor must the claimant produce objective medical evidence

21   of the causal relationship between the medically determinable impairment and the symptom."

22   *Id.* "Finally, the claimant need not show that her impairment could reasonably be expected to

23   cause the *severity* of the symptom she has alleged; she need only show that it could reasonably

24   have caused *some* degree of symptom." *Id.* (emphasis added).  This approach to the evaluation

25   of a claimant's testimony "reflects the highly subjective and idiosyncratic nature of pain and

26   other such symptoms." *Id.*

27          In this case, the ALJ found that Pineda suffers from the underlying impairments of

28   affective disorder and chronic pain syndrome. (Tr. 26) Accordingly, she need not produce

1    objective medical evidence to prove the severity of her symptoms. *Smolen v. Chater*, 80 F.3d

2    1273, 1282 (9th Cir. 1996).   The ALJ's contrary statement that "[h]er pain and limitations are

3    not fully corroborated by objective medical evidence" is not a legitimate reason to discount her

4    credibility or her treating physician's opinion of disability.  (Tr. 32)

5           Alternatively, the ALJ suggests that Pineda's condition may not be as disabling as her

6    physician believes it to be because "[t]here is no evidence of intensification of treatment, which

7    would be expected if the claimant were suffering as alleged."   (Tr. 32) Under certain

8    circumstances, limited or conservative treatment could be evidence that a claimant's underlying

9    impairment is not disabling.   Here, however, there is no evidence in the record that

10   "intensification of treatment" was an option.  In addition to seeing her treating physician, Pineda

11   has sought care from a pain specialist and an ear, nose, and throat specialist. (Tr. 410-416; 532-

12   607).   There is no indication in the medical record that any other unexplored options exist.  In

13   fact, Pineda's current pain medication is so strong that it appears to be affecting her balance,

14   mental alertness, and her fine motor skills. (Tr. 610),  *see also* (Tr. 216, 219, 222)  The ALJ's

15   unsupported speculation that Pineda is receiving only conservative treatment does not constitute

16   substantial evidence for discounting her credibility or the opinion of her treating physician.

17          In her response, the Commissioner argues that Lamm's opinions could be reasonably

18   discounted because they are premised in part on his diagnosis of fibromyalgia and the medical

19   record does not explain the basis for this diagnosis.  (Tr. 33, p. 21) Also, Lamm's opinions are

20   based in part on his diagnosis of shoulder bursitis, and it appears that this diagnosis was based

21   on the claimant's subjective symptoms rather than on imaging studies. *Id*.  The ALJ, however,

22   did not make these arguments in his decision, and this court may not consider them. *Stout v.

23   Commissioner, Social Sec. Admin*. 454 F.3d 1050, 1054 (9th Cir. 2006).

24          The ALJ improperly discounted the treating physician's opinion of disability. "Where the

25   Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or

26   examining physician, we credit that opinion as a matter of law." *Lester v. Chater*, 81 F.3d 821,

27   834 (9th Cir.1996). "Where we conclude that a claimant's testimony or a doctor's opinion should

28   have been credited and, if credited, would have led to a finding of eligibility, we may order the

payment of benefits." *Regennitter v. Commissioner*, 166 F.3d 1294, 1300 (9th Cir.1999); *see also Ghokassian v. Shalala*, 41 F.3d 1300, 1304 (9th Cir. 1994) (remanding for payment of benefits where the Secretary did not provide adequate reasons for disregarding the treating physician's opinion); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).

In this case, the ALJ improperly discounted the opinion of the treating physician. His evidence should be credited as a matter of law. Crediting this evidence indicates Pineda has been disabled since October 23, 2008. (Tr. 134, 138); s*ee Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) ("Factors relevant to the determination of the date of disability include the individual's declaration of the date of when the disability began, work history and available medical history."); *Swanson v. Secretary of Health and Human Services*, 763 F.2d 1061, 1066 n.2 (9th Cir. 1985) (The claimant's onset date should be adopted by the Commissioner if it is consistent with the available evidence.); *Willbanks v. Secretary of Health and Human Services*, 847 F.2d 301, 304 (6th Cir. 1988) (same). Remand of the case would serve no useful purpose. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Holohan v. Massanari* 246 F.3d 1195, 1210 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) ("We may direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."); *See also* SSR 96-2p ("If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e. it must be adopted."). A finding of disability should be entered.

IT IS ORDERED that the final decision of the Commissioner is reversed. The case is remanded for payment of benefits.

The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 13th day of November, 2013.

- 14 -

1

2

3

Leslie A. Bowman
United States Magistrate Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28